AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

DISTRICT OF DELAWARE

In the Matter of the Search of
(Address or brief description of property or premises to be seized)

2000 BMW 740IL
VIN # WBAGH8348YDP12004
PA license plate number EVK5710

APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT

Case Number: 06- 46 M

I, Peter A. Gangel being duly sworn depose and say: I am a(n)

Special Agent, F.B.I., and have reason to believe that in the Middle District of Pennsylvania there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

2000 BMW 740IL, VIN # WBAGH8348YDP12004, PA license plate number EVK5710

which is (state one or more bases for seizure under the United States Code)

subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A)

**REDACTED**

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof.   X   Yes   ___ No

Signature of Affiant
Peter A. Gangel
Special Agent
Federal Bureau of Investigation

FILED
MAY 19 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Sworn to before me, and subscribed in my presence

April 13, 2006                                                    at   Wilmington, Delaware
Date                                                                       City and State

Honorable Kent A. Jordan
United States District Judge
District of Delaware
Name and Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT OF PETER A. GANGEL

Your affiant, Peter A. Gangel, being duly sworn, hereby does depose and state:

1. I am a special agent with the Federal Bureau of Investigation, "FBI," in the Wilmington, Delaware office. I have been a special agent with the FBI for more than nineteen years and am currently assigned to investigate financial crimes.

2. I submit this affidavit in support of a warrant authorizing the seizure of a 2000 BMW, 740 IL, Vehicle Identification Number WBAGH8348YDP12004, Pennsylvania license plate number EVK5710 which is registered to and owned by James Art Ball, Mechanicsburg, PA 17050. The information contained in this affidavit is based upon my personal knowledge gained by reviewing various financial and business records, interviewing witnesses, and speaking with other law enforcement officers involved in this investigation.

3. On December 18, 2001, APAD Inc., doing business as United Check Cashing, 2080 Limestone Road, Wilmington, DE, entered into an agreement to have an Automated Teller Machine (ATM) serviced by Automated Systems America Inc. (ASAI), located in Glendale, CA. United Check Cashing executed the ATM service agreement with Bob Goldstein, who was employed by James Art Ball, an agent for ASAI. The service agreement provided that United Check Cashing would keep the ATM filled with currency and be reimbursed for the currency which was dispensed to the ATM customers. The agreement also provided that each customer of United Check Cashing would pay a surcharge fee of $1.75 for each ATM transaction. United Check Cashing would receive $1.70 from each surcharge fee, while Goldstein would receive $ .05.

4. In October 2002, ASAI utilized RBSA, doing business as EFT Logix, Carrollton, TX, to electronically process the transactions for the ATM located at United Check Cashing. The terminal identification number for the ATM at United Cash Checking was "RBS2T125." EFT Logix directly reimbursed APAD Inc. for the currency which was dispensed in each ATM transaction at United Check Cashing and also paid its percentage of the surcharge fees. EFT Logix made the ATM reimbursements and surcharge fee payments via ACH deposits to an account that APAD Inc. maintained at Commonwealth Bank.

5. On February 20, 2003, APAD, Inc. notified Bob Goldstein via a facsimile that on March 5, 2003, it was changing banks and closing the account at Commonwealth Bank. Goldstein directed APAD Inc. to notify the ASAI office in Chicago, IL about the account closing and bank change. APAD Inc. sent the ASAI office in Chicago a facsimile which contained information about the closing of the Commonwealth Bank account and information about the company's new account at First Union Bank. APAD Inc. requested ASAI to redirect all the future ATM reimbursements and surcharge fee payments to its new account at First Union Bank.

6. The ASAI office in California dealt directly with RBSA and never received noticed from the Chicago branch of ASAI that APAD Inc. had changed bank accounts. In March 2003, RBSA notified Kent Cain, an ASAI employee in California, that the ATM reimbursements and

surcharge fee payments which were owed to United Check Cashing could not be deposited in the account of APAD Inc.

7. In March 2003, Cain advised James Art Ball, the ASAI agent who was responsible for servicing the ATM at United Check Cashing, that funds which were owed to United Check Cashing in regards to the ATM transactions could not be deposited into the account of APAD Inc. at Commonwealth Bank. Ball told Cain there was a bank problem and he would correct it.

8. On March 20, 2003, Ball sent a three-page facsimile to the California office of ASAI. The facsimile fraudulently directed ASAI to have RBSA, doing business as EFT Logix, to deposit the reimbursements and surcharge fees generated by the ATM transactions at United Check Cashing to account number              at WSFS Bank, 838 Market Street, Wilmington, DE. This account was identified as the business account of Cash Plus Inc.,            Drive, Mechanicsburg, PA, a business owned by Ball. On March 24, 2003, Ball began to divert the ATM reimbursements and surcharge fee payments derived from ATM transactions at United Check Cashing to his business account without the permission or knowledge of APAD Inc. or United Check Cashing.

9. From March 24, 2003, through April 13, 2004, Ball diverted $97,739.20 in ATM reimbursements and surcharge fees to his business account at WSFS Bank. As the servicing agent for the ATM, Ball had to be fully aware that this money was derived from ATM transactions at United Check Cashing and should have been remitted to APAD Inc. However, Ball misappropriated this money for his own use.

10. In April or May 2004, Ball contacted ASAI and directed that the ATM reimbursements and surcharge fee payments for transactions at United Check Cashing should now be deposited into his personal account, numbered              at Citizen's Bank. A review of bank records reflects that from May 26, 2004, through January 31, 2005, Core Data (which had purchased RBSA and EFT Logix) deposited approximately $47,000 into Ball's personal account at Citizen's Bank. This money was reimbursements and surcharge fee payments for ATM transactions which occurred at United Check Cashing.

11. Ball used the bulk of the funds in the Citizen's Bank account, and, by the beginning of January 2005, had approximately $2,740 in the account. On January 31, 2005, Ball deposited $32,072 of apparently legitimate funds into his Citizen's account. Between January 31, 2005, and February 4, 2005, an additional $2,940 in misappropriated funds from United Check Cashing were directly deposited into the Citizen's account in Pennsylvania via wire transfers from Core Data in Texas. This $2,940 represents the proceeds of a specified unlawful activity, to wit, wire fraud in violation of 18 U.S.C. § 1343. The deposit of the $2,940 in illegitimate funds into an account containing approximately $32,000 in apparently legitimate funds is a financial transaction affecting interstate commerce involving the proceeds of a specified unlawful activity designed to conceal the source of the proceeds.

12. On February 4, 2005, Ball went to three different branches of Citizens Bank of Pennsylvania and withdrew $18,000, $10,000 and $6,000 by writing three checks against his personal bank account, number              , all payable to James Ball. Ball wrote these three

checks off the same account into which he had deposited the money misappropriated from United Check Cashing. That same day, Ball went to three different branches of Citizens Bank to cash the three checks totaling $34,000. When asked to produce identification in order to cash the checks, Ball showed his Pennsylvania driver's license.

13. Since this transaction was in excess of $10,000, when Ball cashed the $18,000 check, Citizens Bank filed a Currency Transaction Report (CTR) identifying James A. Ball as the owner of the funds. Part of the CTR form asks for the occupation/business of the owner of the funds. Ball claimed his occupation to be a Mortgage Lender. The Pennsylvania Department of Banking, Licensing Division does not have Ball listed as a licensed Mortgage Lender in the Commonwealth of Pennsylvania. In addition, previous CTR filings relating to Ball have listed his occupation as "ATM Business President".

14. Also on February 4, 2005, after cashing the three checks, Ball went to the Western Union Agent located at the Giant Food Store, Mechanicsburg, Pennsylvania with the $34,000 in cash. The Giant Food Store filed a CTR listing Ball as the owner of the funds. The CTR was for $33,511currency received from Ball, the difference from the $34,000 being the Western Union fees associated with seven wire transfers. Again Ball presented his Pennsylvania driver's license as identification, but this time claimed his occupation to be "Vice President of Sales". Ball directed that the seven wire transfers be sent to JPMorgan Chase Bank in Florida to pay off the balance of the automobile loan for his 2000 BMW 740IL ("the BMW").

15. The BMW is, therefore, traceable to property involved in a violation of 18 U.S.C. § 1956(a)(1)(B)(i), and is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

16. Your affiant knows that the BMW is presently located in the Middle District of Pennsylvania. This Court has authority to issue a warrant to seize property located in another district pursuant to 18 U.S.C. § 981(b)(3).

SA Peter A. [signature]